UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:17-CV-00149-GNS-HBB

WOODSON D. BROWN                                                                    PLAINTIFF

v.

HOUSING AUTHORITY OF TOMPKINSVILLE, et al.                         DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (DN 36). The motion is ripe for adjudication. For the reasons outlined below, the motion is **GRANTED**.

### I.      STATEMENT OF FACTS AND CLAIMS

Woodson Brown ("Plaintiff" or "Brown") is a former employee of the Housing Authority of Tompkinsville ("Housing Authority"). (Compl. 3, DN 1). The Housing Authority operates the Tompkinsville Housing Project under a contract with the U.S. Department of Housing and Urban Development. (Am. Compl. 1, DN 28). During the time relevant to this action, Defendant Mike Turner ("Turner") was the executive director of the Housing Authority. (Turner Dep. 9:7-12, Mar. 21, 2018, DN 36-3). Brown began his employment with the Housing Authority as a maintenance director in September 2015, and he resigned in January 2016. (Compl. 3). The events giving rise to this action concern voluntary on-the-job prayer sessions conducted by Turner while Brown was an employee.

In addition to his work for the Housing Authority, Turner is a minister. (Turner Dep. 22:5-7). Prior to Brown's tenure, the Housing Authority had only three total employees: Turner, Ernest Eldridge ("Eldridge"), and Cindi Burnett ("Burnett"). (Turner Dep. 22:24-25:1). Turner testified

that the three had become close in the wake of difficult times in each employee's family. (Turner Dep. 23:1-4). It was common for Turner, Eldridge, and Burnett to discuss their belief systems and faith in God. (Turner Dep. 23:4-6). Eventually, Turner began offering an option to Burnett and Eldridge that, if they wished, they could pray together as a group. (Turner Dep. 23:6-10). Turner testified, however, that he never preached in the office. (Turner Dep. 23:11-12).

Brown's daughter passed away unexpectedly on December 11, 2015. (Brown Dep. 90:8-9). Both Turner and Burnett came to the funeral home to express their sympathies. (Brown Dep. 91:7-11). Following his daughter's passing, Brown took some time off work. (Brown Dep. 90:7-16). Upon his return, Brown mentioned for the first time to Turner that he took issue with the office prayer sessions. (Brown Dep. 89:25-90:5). Brown told Turner he did not want to pray, and in fact he was mad at God at the moment. (Brown Dep. 134:2-10). Brown testified that when he raised the issue to Turner, Turner told Brown he needed to open his mind to the possibility of allowing God to heal him. (Brown Dep. 136:5-8). Brown thought Turner was well-intentioned and sincerely trying to help. (Brown Dep. 135:18-24). Turner did not tell Brown he was required to pray with him, and Brown stated Turner was not praying or preaching in that interaction. (Brown Dep. 136:1-3, 136:8-9).

In the wake of his daughter's death, Brown's work suffered and he struggled with concentration and staying on task. (Brown Dep. 137:12-16). Brown testified that Turner knew of his struggles and performance issues but did not fire him. (Brown Dep. 137:17-21). On Brown's final day of employment with the Housing Authority, Turner came to the maintenance building where Brown worked, and the two began to talk about "a little bit of everything." (Brown Dep. 135:21-23). They discussed what was bothering Brown and what might help him. (Brown Dep. 135:23-25). In the course of the conversation, Turner said he could tell Brown did not want to

2

remain at the Housing Authority, and Brown agreed, stating he in fact no longer wanted to work there. (Brown Dep. 135:23-24, 136:3-5). Turner informed Brown that he did not need to give two weeks' notice, and if he wanted that day to be his last, he could quit immediately. (Brown Dep. 136:5-10). Brown responded that he did want that day to be his last and quit on the spot. (Brown Dep. 136:10-13).

Plaintiff now brings claims of religious discrimination seeking damages under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and injunctive relief under 42 U.S.C. § 1983. (Compl. 1-2). Following discovery, Defendants moved for summary judgment on Brown's claims. (Defs.' Mot. Summ. J., DN 36).

## II. <u>JURISDICTION</u>

The Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.

## III. <u>STANDARD OF REVIEW</u>

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical

3

doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

## IV. <u>DISCUSSION</u>

### A. <u>Title VII Claim</u>

To satisfy the definition of an employer under the Civil Rights Act of 1964, a defendant must have at least fifteen employees. 42 U.S.C. § 2000e(b). Plaintiff candidly admits the Housing Authority employs only two individuals. (Pl.'s Resp. Defs.' Mot. Summ. J. 4, DN 39 [hereinafter Pl.'s Resp.]). Because Title VII's numerosity requirement is not satisfied, this claim must be dismissed. *See Getting v. Building Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 306 (6th Cir. 2003) (affirming the granting of summary judgment on a discrimination claim asserted a defendant because it did not have enough employees to qualify as an employer under Title VII).

### B. <u>Section 1983 Claim</u>

Defendants argue that Plaintiff's remaining claim under 42 U.S.C. § 1983 is moot. (Defs.' Reply 7, DN 40). First, it must be noted that Defendants failed to raise the issue of mootness in their motion. Ordinarily, when a movant raises an argument for the first time in its reply, courts may either ignore those arguments or permit the respondent to file a sur-reply. *Int'l-Matex Tank Terminals-Ill. v. Chem. Bank*, No. 1:08-cv-1200, 2009 WL 1651291, at *2 (W.D. Mich. June 11, 2009) (collecting cases). Here, however, "[b]ecause the exercise of judicial power under Article

4

III of the Constitution depends on the existence of a live case or controversy, mootness is a jurisdictional question." *Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009) (citation omitted). The Court will therefore address this argument.

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (citation omitted). A party loses a legally cognizable interest in a case when some occurrence "make[s] it 'impossible for the court to grant any effectual relief whatever to a prevailing party . . . .'" *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 713 (6th Cir. 2011) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)). A case found to be moot must be dismissed. *Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701, 703 (6th Cir. 2009).

Plaintiff's claim for injunctive relief presents an Establishment Clause challenge. As such, the claim sounds in equity, and monetary relief is unavailable to Plaintiff. *Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 788 F.3d 580, 596 (6th Cir. 2015) (Batchelder, J., concurring).[1] Without any monetary claim, the issue becomes whether Plaintiff maintains a sufficient personal stake in this action such that the requested injunction would afford him "effectual relief." *Fialka-Feldman*, 639 F.3d at 713 (citations omitted). To that end, Plaintiff has requested:

> 1. That the Court grant an order declaring Defendant's customs, policies, and practices alleged above to be in violation of the Establishment Clause of the First Amendment to the U.S. Constitution;
> 2. That the Court grant an order permanently, enjoining Defendants and their officers, agents, affiliates, subsidiaries, servants, employees, successors, and all other persons or entities in active concert or privity or participation with them, from continuing their unlawful conduct at the Housing Authority of Tompkinsville including;

---

[1] Plaintiff also asserted a claim for nominal money damages. (Compl. 3). Even if money damages were available, however, Plaintiff has failed to assert any actual measure of damages, and therefore the claim is waived. *Neff v. City of East Lansing*, 724 F. App'x 448, 450 n.4 (6th Cir. 2018).

5

> a. Participating in, organizing, promoting, advancing, aiding, endorsing, or causing prayer, religious devotionals, or proselytizing to employees;
> b. Encouraging employees to participate in religious events and activities, or otherwise promoting religious events and activities;
> c. Conveying messages endorsing religion;
> d. Retaliating against Plaintiffs or their family members for objecting to Defendants' unlawful practices and bringing this action; and
> e. otherwise unconstitutionally endorsing religion or religiously coercing employees.

(Am. Compl. 2-3).

Even if the Court were to grant this broad prayer for relief, Brown would remain unaffected. Brown voluntarily left his position with the Housing Authority and does not seek reinstatement. Any injunctive relief against his former employer's internal operating procedures would have no effect on Brown. Whether employees of the Housing Authority are praying, proselytizing, witnessing, or holding a revival in the office can have no impact on Brown, who resigned his position and does not wish to return.

By way of analogy, the Eleventh Circuit Court of Appeals held moot a group of high school students' challenge to their school's custom of praying at graduation because the students had all graduated. *Adler v. Duval Cty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997). "Because all four appellants have graduated, we find that to the extent they seek declaratory and injunctive relief, their case is moot." *Id.*

Brown's position is the same as the graduated students in *Adler*. He has moved on from the Housing Authority and therefore has no personal stake in whatever alleged constitutional violations may be occurring there. Brown admits he left voluntarily and further admits Turner never told him his participation in the prayer sessions was mandatory. Thus, any action by the Court enjoining the Housing Authority would do nothing to effectuate legal relief for Brown. The Court therefore concludes Plaintiff's Establishment Clause claim is moot.

## V.    CONCLUSION

For the reasons stated, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Motion for Summary Judgment (DN 36) is **GRANTED**;

2. Plaintiff's Complaint (DN 1) and Amended Complaint (DN 28) are **DISMISSED WITH PREJUDICE**; and

3. This matter is stricken from the active docket of the Court.

Greg N. Stivers, Chief Judge
United States District Court

May 15, 2019

cc:    counsel of record